**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM L. BAKER,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No.  6:12-cv-1131-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his applications for a period of disability, disability insurance benefits, and SSI under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed for a period of disability, disability insurance benefits, and SSI benefits on August 27, 2006, alleging an onset of disability on September 4, 2006, due to a heart condition and right hip problems.  R. 136-45, 184.  His application was denied initially and upon reconsideration. R. 85-89.  Plaintiff requested a hearing, which was held on January 21, 2010, before Administrative

Law Judge John D. McNamee-Alemany (hereinafter referred to as "ALJ"). R. 57-67. In a decision dated May 26, 2010, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 25-41. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 8. The Appeals Council denied Plaintiff's request on May 16, 2012. R. 1-6. Plaintiff filed this action for judicial review on July 20, 2012. Doc. 1. The Record indicates on December 16, 2010 that Plaintiff was subsequently found to be disabled as of May 27, 2010 and began receiving benefits effective November 2010. R. 16-21.

### B. Medical History and Findings Summary

Plaintiff was 53 years old at the time of the hearing, and he had worked as a cook for thirty years. R. 63. Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of coronary disease, angina on exertion, shortness of breath, right hip pain, and chronic pulmonary insufficiency. R. 70-73, 223. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative joint disease of the hips, chronic obstructive pulmonary disease (COPD) and chest pain with history of myocardial infarction, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 30. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except that he can stand and walk for 30 minutes at a time for a total of 4 hours in an eight hour workday; can sit for a total of 6 hours in an eight hour workday but requires a sit-stand option to alternate between positions about every 30 minutes without leaving the work station [for about a minute at a time to allow stretching]; can frequently stoop, kneel, crouch; can occasionally climb stairs; can never climb ladders or scaffolds; must avoid concentrated exposure to uneven terrain, wetness, humidity, fumes, odors, dusts, gases, poor ventilation and hazards such as unprotected heights and moving machinery. R.31. Based upon Plaintiff's RFC, the ALJ determined

that he could not perform past relevant work. R. 33. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as ticket taker, parking lot cashier, and surveillance system monitor. R. 34. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 35.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by finding he had the RFC to light work contrary to the evidence in the record. Second, he claims the ALJ erred in relying on the VE testimony after failing to inquire whether the testimony conflicted with the Dictionary of Occupational Titles and by failing to make clear what jobs the vocational expert opined Plaintiff could perform since no DOT codes for the jobs were provided. Third, Plaintiff contends the ALJ erred by improperly applying the pain standard and in evaluating his credibility. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC

Plaintiff argues that the ALJ erred in determining that he had the residual functional capacity to perform light work with some additional limitations when there was not substantial evidence

supporting the residual functional capacity determination. Plaintiff also argues that the ALJ failed to consider all of the evidence, especially the treatment records of his treating cardiologist, Dr. Bitar.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

The ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986) (requiring the ALJ to articulate his reasons for "giving no weight to the diagnoses accompanying the test results."). As a general rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ made the following residual functional capacity determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can stand and walk for 30 minutes at a time for a total of 4 hours in an eight hour workday; can sit for a total of 6 hours in an eight hour workday but requires a sit-stand option to alternate between position about every 30 minutes without leaving the work station [for about a minute at a time to allow stretching]; can frequently stoop, kneel, crouch; can occasionally climb stairs; can never climb ladders or scaffolds; must avoid concentrated climb stairs; must avoid concentrated exposure to uneven terrain, wetness, humidity, fumes, odors, dusts, gases, poor ventilation and hazards such as unprotected heights and moving machinery.

R. 31.

Plaintiff argues that the ALJ erred in determining his RFC because he made no reference to the evidence from his treating cardiologist, Dr. Bitar, in his decision, and such omission was error in light of the Eleventh Circuit's decision in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011)[1]. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan.24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments,

---

[1] Plaintiff also argues that the ALJ erred in relying on the opinion of a "single decision maker" with the SSA, who is not a medical doctor (R. 461), thus such opinion should not be given any weight. The Commissioner concedes that the single-decision maker's assessment is not considered opinion evidence (Doc. 21 at 9), but argues the ALJ was entitled to consider it, and at most the ALJ's mention of it was harmless error. Doc. 21 at 9. The Court need not address this contention given the disposition on Plaintiff's other points.

and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, *supra)*. The Eleventh Circuit stated that " '[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.' " *Winschel*, 631 F.3d at 1178–79 (*quoting Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir.1981)).

The Commissioner concedes that the ALJ did not explicitly discuss Dr. Bitar's treatment notes, but argues that it was a harmless error because "Plaintiff failed to show that the ALJ's omission created clear prejudice to his case because Dr. Bitar's reports are fully consistent with the ALJ's findings." Doc. 21 at 13. The Commissioner cites a number of inapposite pre-*Winschel* cases in support. Doc. 21 at 13 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Battle v. Astrue*, 243 Fed.Appx. 514, 522 (11th Cir. 2007); *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *Mills v. Astrue*, 226 Fed.Appx. 926, 931 (11th Cir. 2007)).

The Commissioner contends that the ALJ's discussion in passing of Plaintiff's diagnoses of diffuse coronary disease and angina (R. 32, 369), the ALJ's acknowledgment of Plaintiff's history of "severe coronary artery disease" and "refractory angina" (R. 32), and the ALJ's discussion of the consultative examiner's report of Plaintiff's chest pain and history of acute myocardial infarction (R. 33, 488) were sufficient to meet the requirements of *Winschel*. The Commissioner argues that Plaintiff failed to show he suffered from additional limitations – not already included in the ALJ's RFC determination – based on Dr. Bitar's report, and the report does not indicate what, if any, functional limitations flowed from his diagnoses of severe angina and severe diffuse coronary disease, and his reports indication Plaintiff's angina was stable (R. 369, 371, 407-08). The Commissioner contends that a remand to have the ALJ explicitly discuss Dr. Bitar's notes would "serve no practical

purpose," would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. Doc. 25 at 14 (citing *Shinseki*, 556 U.S. at 409). The Commissioner has chosen to ignore the holding of *Winschel*.

Pursuant to *Winschel,* whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefore. 631 F.3d at 1179. Even treatment notes may constitute an opinion, as noted in *Winschel*:

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).
> * * *
> The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a "medical opinion," but this argument ignores the language of the regulations. The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement [ ] from [a] physician ... that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

*Winschel,* 631 F.3d 1176, 1178-79.

In this case, the treatment notes of Plaintiff's cardiologist reflect Plaintiff had a non-Q infarction in 2005 and underwent several cardiac catheterizations, all showing severe diffuse coronary disease and especially a high grade stenosis (70%) in the second septal branch which was too small for angioplasty; he also had severe angina as of October 2005. R. 369, 373, 377, 384. At that time he was having angina attacks once every few days and had shortness of breath with exertion. R. 373.

-8-

Dr. Bitar opined, "If the patient has worsening angina, he may be eligible for permanent disability." R. 374. Dr. Bitar subsequently indicated that Plaintiff was not a candidate for angioplasty or coronary bypass surgery, and that his activity was limited by angina; Plaintiff continued to have angina "sometimes three times a day" that was "relieved with nitro." R. 369. Dr. Bitar further opined that Plaintiff was a "Class II or III Canadian Society Angina Classification." R. 369, 444 (Dr. Bitar - March 30, 2007 – cardiac stress test performed on November 22, 2004). Grade II is considered a "slight limitation of ordinary activity" and Grade III is considered a "marked limitation of ordinary physical activity."[2]

Dr. Bitar also opined that Plaintiff had "had exertional angina for the past year and ha[d] been on medical therapy. He works as a cook and when the weather is hot he tends to have limiting angina and he would be unable to work"; he was having angina attacks almost on a daily basis. R. 371. Plaintiff's representative at the hearing specifically raised Plaintiff's severe diffuse coronary disease and high-grade stenosis, not amenable to heart surgery, as a primary issue; additionally, he raised Plaintiff's daily angina as an impairment. R. 59, 66. Plaintiff testified that he was taking two to three nitroglycerin tablets per day. R. 63.

Although the ALJ found that Plaintiff had the severe impairment of chest pain with history of myocardial infarction (R. 30) and had been treated for refractory angina (R. 32), the ALJ did not discuss Dr. Bitar's diagnosis of Plaintiff's severe diffuse coronary disease and angina, or his opinion that Plaintiff "would be unable to work" if his angina worsened, which it did – becoming more frequent – "sometimes three times a day." R. 32-33. The ALJ's failure to address Dr. Bitar's opinion

---

[2]*See* http://www.ccs.ca/download/position_statements/Grading%20of%20Angina.pdf (visited on August 22, 2013).

about one of Plaintiff's conditions, found to be a severe impairment, was error. As such the ALJ's decision was not based on substantial evidence.

### B. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his credibility due to pain from documented impairments. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's assessment. R. 32. The Commissioner argues the ALJ properly discounted Plaintiff's complaints of disabling limitations.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

> The ALJ included a summary of Plaintiff's statements and testimony at the hearing:
>
> The claimant has alleged that he cannot stand for extended periods of time, he has pain in the hip after standing, he has chest pains and his medications make him light headed. (Ex. 4E). He has alleged that he has shortness of breath and no energy and he can only walk a half a block and then his legs get weak and his feet ache. (Ex. 5E). The claimant has alleged he must use a cane to walk and he avoids climbing stairs altogether. (Ex. 14E).
>
> At the hearing, the claimant testified that his walking is very, very limited. He testified that he does not travel much in a car because it is uncomfortable in his hip and he does not go to stores because of his walking ability. The claimant testified that his breathing is getting worse. He testified that his wife does all the house work and he tries to help, for example, sitting and folding clothes. The claimant testified that when he is walking he has pain in the hip and chest pain and shortness of breath from overexertion. He testified that he cut back and cut back on his smoking and quit about a week and a half ago. The claimant testified that climbing stairs is very difficult and he loses his footage. In answer to the undersigned's question, the claimant testified that his cane was prescribed by Dr. Oostwouder. The claimant testified that sometimes when he is sitting, he has to readjust and turn. He testified that maybe about once a week he goes to Walmart with his wife and he uses a motorized scooter.

R. 32.

Plaintiff argued with regard to his RFC that the ALJ erred in relying on the outdated opinion of the state agency physician. The change in the severity of Plaintiff's hip condition really goes to the issue of his credibility as to the pain in his hip and the need for a cane. As Plaintiff points out the opinion of the state agency physician (R. 503-10) was inaccurate in that it was provided on January 8, 2008 (R. 503-10), well before a February 17, 2010 x-ray showed a "subtle rim of lucency

-11-

surrounding the hardware at the level of the intertrochanteric region, which may be related to subtle loosening of the hardware" and "moderate to advanced degenerative joint disease of the hip joint." R. 534. The state agency physician's January 2008 opinion was based on an x-ray performed in 2006 which showed an intramedullary rod across the femoral neck fracture that was in anatomic alignment. R. 362. Plaintiff argues that there is evidence in the Record showing that, at some point between 2006 and 2010, the hardware had become loosened which would supports his complaints of pain and limitations. Moreover, he argues, if a state agency physician would have been able to consider the February 2010 evidence, a different conclusion might have been reached regarding the residual functional capacity determination. It is notable that the reviewing physician, Dr. Hankins, referred specifically to the 2006 x-ray of Plaintiff's right hip in supporting her RFC assessment. *See* R. 510.

The Commissioner argues[3] that Plaintiff's contention fails because the ALJ noted the "steady improvement in Plaintiff hip injury" and expressly considered the February 2010 x-ray in determining Plaintiff's RFC, citing R. 33. It is true that the ALJ mentioned the February 2010 x-ray, but he included only the portion of the finding "the hardware was in place." R. 33, 534. The ALJ omits the portion of the finding that Plaintiff cites: "There is a subtle rim of lucency surrounding the hardware at the level of the intertrochanteric region, which may be related to subtle loosening of the hardware," which is what Plaintiff argues may be causing the pain in his hip. R. 534. Notable also is that the ALJ correctly quotes the finding of "moderate to advanced degenerative joint disease of the hip joint is present" but fails to comment on it or state why he discounted it. R. 33, 534. The ALJ cannot choose to credit only those portions of the record that support the more favorable RFC and credibility assessments and ignore or omit portions that do not, without any further discussion.

---

[3]The Commissioner's arguments regarding Plaintiff's smoking are inapposite to the discussion of he requires a cane to walk with his hip injury. Doc. 21 at 16.

-12-

On remand, the ALJ will assess whether Plaintiff's right hip hardware had become loose, causing pain, and whether Plaintiff's "moderate to advanced degenerative joint disease of the hip joint" is causing him pain; and appropriately factor the non-exertional limitation of pain into Plaintiff's RFC assessment.

### C. VE testimony

Plaintiff argues that the ALJ erred in relying on vocational expert testimony after failing to inquire whether the testimony conflicted with the Dictionary of Occupational Titles as required by Social Security Ruling 00-4p when there is a conflict with the DOT. He argues that it is not even clear what jobs the vocational expert opined the claimant could perform since no DOT codes for the jobs were provided. He further alleges a conflict existed because the DOT does not incorporate a "sit/stand option," which the ALJ had included in the hypothetical posed to the VE. The Commissioner argues that the VE indirectly testified that his testimony was consistent with the DOT in the course of answering questions from Plaintiff's representative. R. 66.

In response to the ALJ's hypothetical, the VE testified the individual could perform such jobs as ticket taker, parking lot cashier, and surveillance system monitor. R. 34, 65. Based on the VE's testimony, the ALJ concluded Plaintiff could perform a significant number of jobs in the national economy and was not disabled. R. 35.

The Commissioner also argues generically that VE testimony may trump an inconsistent provision of the DOT, but does not explain why it would in this case. Instead, the Commissioner concedes that, in this case, the ALJ did not ask the VE about potential conflicts with the DOT. However, the Commissioner contends that the VE "indirectly" testified his testimony was consistent with the DOT with regard to the positions of ticket-taker and parking lot cashier. On remand, the ALJ will ask about conflicts between the VE's testimony and the DOT in accordance with the Social

Security Rulings, or explain why he did not follow the Ruling. *See* SSR 00-4p, 65 Fed. Reg. 75759, 75760 (2000) (providing: "When a VE or [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or [vocational specialist] evidence and information provided in the DOT."). In this case, it appears that the ALJ's failure to inquire of the VE about any conflicts with the DOT was most likely an oversight.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 4, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record